## CHARLES A. FOOSHEE v. THE STATE.

No. 15109. Delivered March 16, 1932.

The opinion states the case.

*Mays & Mays* and *Dave T. Miller,* all of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for ten years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, did voluntarily kill Billy Fooshee by cutting and stabbing her with a knife.

Deceased was the wife of appellant. After the separation of deceased from her first husband she and appellant became sweethearts. Prior to her marriage to appellant, deceased gave birth to a baby. Appellant testified that he was the father of the child. It appears that deceased had left the child on the doorstep of some home in Fort Worth. The child was delivered to a charitable institution. Appellant instituted a search for the baby, and, upon finding it, requested that it be released to him, stating that he and deceased were going to marry. After they had married the baby was placed in their possession, and they went to live in the home of appellant's mother.

The state's testimony was to the effect that shortly prior to the homicide appellant assaulted deceased with his fists. The homicide occurred late at night near a dance hall. Witnesses for the state testified that as deceased came from the dance hall appellant attacked her. Deceased was stabbed several times with a knife, and died shortly after being taken to a hospital.

Appellant testified that he had gone to the dance for the purpose of asking deceased to come home to their sick baby; that she came out of the dance hall with another man; that he requested deceased to go home with him; that the other man attacked him, saying he had a date with deceased, and he (appellant) drew his knife during the difficulty; that he did not stab deceased. Appellant testified, further, that shortly after their marriage deceased began going to dances; that she made dates with other men and at times remained out all night; that she often came home in a drunken condition; that he asked her, in effect, to give up her wild life and take care of their child; that she finally left him; that he was endeavoring to get her to come home and take care of their sick child at the time he went to the dance hall. Appellant denied that he had any intention to kill deceased, and stated positively that he did not kill her.

After the difficulty in which deceased lost her life, appellant fled to Dallas, where he went to the home of a relative. This relative, upon being advised by appellant's mother that appellant was being sought in Fort Worth for killing his wife, took appellant to the jail in Dallas. Upon reaching the jail, he took appellant into the jailer's office and advised him that appellant's mother had requested him to bring appellant to Fort Worth, but that he did not want the responsibility, and would turn appellant over to him. The jailer replied that he would take good care of appellant, and asked one of his deputies to call up the sheriff's office at Fort Worth. This was done. Finally, the sheriff at Fort

Worth was gotten on the telephone, and appellant talked to him. At the time appellant had this conversation, the Sheriff of Tarrant county did not know that appellant was wanted in Fort Worth for killing his wife. Appellant testified, on his direct examination, that the reason he went to Dallas was because he did not want to say in the city jail in Fort Worth on the night of the homicide. He said he thought that probably he had hurt the man with whom he had had the difficulty, but he did not know that his wife had been hurt. At this point we quote appellant's testimony as follows: "As I stated, after this difficulty I went over to Dallas, and did not learn that my wife was killed until about six o'clock the next morning—between five and six o'clock. My mother, or father called me, I'm not sure which one of the two did call me. They did not talk to me, they talked to my uncle, and I learned through that source that my wife had been killed, and learned that they were looking for me in connection with it. When I learned that I went to the sheriff's office in Dallas, and told them I heard they were looking for me in connection with the death of my wife in Fort Worth. The jailer said he hadn't heard anything about it, but would call Fort Worth and find out. I did not try to run away or get away before I heard about this. When I heard about it I made arrangements to come on back over here and did come back."

We quote from appellant's testimony on cross-examination, as follows: "After I left Fort Worth I went to my uncle's at Dallas. I did not stay over there until I found out the officers were going to be able to identify me as the man who ran away from the scene of the cutting, and did not give up because I thought they were going to be able to identify me as the man that ran away from that cutting."

The sheriff of Tarrant county testified that, in talking to him over the telephone from the jail in Dallas, appellant told him that he wanted him to come and get him, and stated, further, that he was the man who had killed his wife in Fort Worth. He testified, further, that he went to Dallas and talked to appellant in the jail. He said he searched appellant and found a knife in his possession; that after he took the knife from appellant, appellant said, in substance, that was the knife he "did the work with." It appears that appellant had not been placed in a cell in the Dallas county jail, but that he was in the jailer's office. This office was locked.

Appellant objected to the testimony of the sheriff on the ground that he was under arrest, and that article 727, C. C. P., relating to confessions, had not been complied with. We think the circumstances shown by the bills of exception reflect the fact that appellant was under arrest at the time he made the statement in question to the sheriff. Lightfoot v. State, 117 Texas Crim. Rep., 515, 35 S. W. (2d) 163. The purpose and effect of article 727, C. C. P., is to prevent the prosecution from using

against the accused, by the testimony of the officer placing him under arrest, a verbal statement made by the accused which the state seeks to use in proving his guilt. Lightfoot v. State, supra. Appellant denied upon the trial that he killed his wife. The state introduced against him his confession to the effect that he had killed her, and, further, proved by the officer that he showed him the knife with which he stabbed her. We are constrained to hold that the reception in evidence of the statement constitutes reversible error.

Appellant objected to the charge of the court on the ground that, in charging upon the penalty to be assessed in the event the jury determined that he acted without malice, he was not given the benefit of the reasonable doubt. Upon another trial the doctrine of reasonable doubt should be given proper application in connection with the charge mentioned.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.